# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HANS J. RAPOLD, | ) |
| Plaintiff, | ) |
| | ) Case No. 08 C 7369 |
| v. | ) |
| | ) The Honorable William J. Hibbler |
| BAXTER INTERNATIONAL, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

A jury found for Baxter International, Inc. and the Plaintiff, Hans Rapold asks the Court to reconsider its ruling on his Motion for a Judgment as a Matter of Law and also moves for a retrial. The Court DENIES Rapold's Motions. Baxter also seeks its costs.

At the conclusion of his case in chief, Rapold moved for judgment as a matter of law pursuant to Rule 50(a), which of course was not proper given that Baxter had yet to present its case. Fed. R. Civ. P. 50(a) (noting that a judgment as a matter of law can be granted against a party "[i]f a party has been fully heard on an issue."). Rapold now renews the request under Rule 50(b). Under Rule 50(b), a Court reviews the evidence available to the jury in the light most favorable to the prevailing party and disturb the verdict only if no rational jury could have returned the verdict that it did. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010).

Rapold's Motion rests upon a misleading statement of law and misrepresentations of the evidence before the jury. Rapold suggests that 42 U.S.C. § 2000e-2(m) requires judgment in his favor if his national origin was a motivating factor for his termination. While a plaintiff who

1

produces evidence that his national origin was a motivating factor for his termination may be entitled to judgment, an employer can limit liability if it comes forward with evidence that it would have made the same decision even if it had not allowed national origin to enter the decisionmaking process. *Grigsby v. LaHood*, 628 F.3d 354, 360 (7th Cir. 2010). Rapold ignores, entirely, the impact of the potential partial-defense, that limits liability.

Putting aside Rapold's misleading statement of law, he also grossly misrepresents the evidence presented to the jury. Rapold seizes upon isolated portions of Andrea Hunt's testimony. Rapold suggests that when Andrea Hunt admitted that Rapold was terminated in part because of "cultural differences" he irrefutably proved his discrimination claim. Such a conclusion requires the Court to consider Hunt's testimony out of context and also to draw inferences in favor of Rapold and not in favor of the jury's verdict. When Hunt's testimony is examined in context, any implication that her references to "cultural differences" support a discrimination claim vanish. Examined in context, Hunt's references — whether made in an email or during live testimony — to "culture" refer to *Baxter*'s culture, not differences between American and German or Swiss culture. In addition, the testimony of other witnesses further contextualizes Hunt's reference to "cultural differences." Christine Parro testified that she too understood any reference to cultural differences to refer to Baxter's corporate culture. Given the entire context of Hunt and Parro's testimony, a reasonable jury could have found that Rapold failed to present any evidence, direct or circumstantial, of discrimination.

Moreover, Baxter presented numerous instances of Rapold behaving inappropriately — refusing to cooperate with its immigration attorneys, failing to complete paperwork necessary to obtain a visa, failure to follow Hunt's instruction to purchase a speaker phone to make

2

telecommuting more efficient and effective, launching a fifteen minute tirade directed at other Baxter employees during a group meeting, yelling at other Baxter employees and hanging up the telephone after being warned by Hunt about his behavior, calling Baxter employees names, refusing to consider the comments and input of other Baxter employees, and behaving so inappropriately with a real estate agent that Baxter hired to assist him in finding a house that the agent refused to work with him further. Given the testimony detailing Rapold's extensive unprofessional conduct, even if Hunt's references to cultural differences could not fairly be considered to be references to Baxter's corporate culture, a reasonable jury nonetheless could have found that any discriminatory animus was not a motivating factor at all but that Baxter instead withdrew its offer to Rapold because of his behavior. The Court DENIES Rapold's Renewed Motion for Judgment as a Matter of Law.

Rapold also moves for a new trial under Rule 59. Rapold argues that the Court erred in refusing to give a "motivating-factor" instruction to the jury. To win a new trial based on an erroneous jury instruction, Rapold must show that the Court's instruction did not accurately state Seventh Circuit law and that he was prejudiced by the instruction because the jury was likely confused or misled. *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001).

Rapold argues that the Supreme Court has settled the issue of when a motivating-factor instruction is required. *Desert Palace v. Costa*, 539 U.S. 90, 101 (2003). Contrary to Rapold's claim that Supreme Court precedent makes clear that motivating-factor instruction is required whenever the plaintiff presents evidence of discrimination, *Desert Palace* suggests only that a plaintiff can demonstrate that discrimination was a motivating factor with circumstantial evidence. *Id.* at 98-101. The Seventh Circuit, post *Desert Palace*, has stated that it has yet to decide when it

is appropriate to give a motivating-factor instruction. *Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 438 (7th Cir. 2009); *see also Federal Civil Jury Instructions of the Seventh Circuit* 3.01, cmt. c, ¶ 3 (2009) (noting that the committee offers no guidance regarding when such an instruction is appropriate in the absence of Seventh Circuit precedent). In fact, other Seventh Circuit precedent suggests that a motivating-factor instruction is not appropriate simply because a plaintiff raises an inference of discrimination. In *Boyd v. Ill. State Police*, for example, the concurrence encouraged district courts to do a better job of presenting the issue of "motivating factor" to the jury, and implied that a motivating-factor instruction is not appropriate in all Title VII cases. 384 F.3d 888, 899 (7th Cir. 2004) (Posner, J., concurring). To make clear the purpose of the motivating-factor instruction, the concurrence detailed four hypothetical cases, noting that the instruction is most applicable when a plaintiff proves that discrimination motivated his termination but the defendant puts on a *partial defense against damages*, arguing that it would have fired the plaintiff anyway, the defense makes the case a mixed-motive case and a motivating-factor instruction is appropriate. *Id.* at 899-901. If, instead, the defendant argues that the *only* reason it fired the plaintiff was because of his performance, it "goes for broke" and can avoid liability only if the jury is convinced that the only reason for firing the plaintiff was his performance, and thus the motivating-factor instruction is not appropriate. *Id.* Put another way, the concurrence observes that a "mixed-motive" case is different from a case in which the plaintiff argues that the employer's reasons for the employment decision were pretextual. *Id.* (citing *Watson v. Southeastern Pennsylvania Trans. Authority*, 207 F.3d 207, 214-20 (3d Cir. 2000) ; *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 121-24 (2d Cir. 1997)). In the former, a plaintiff argues that the employer's proffered reasons for the employment decision were not sufficient to motivate the

4

decision, while in the latter a plaintiff argues that the employer's reasons are phony. In addition, other post-*Desert Palace* Seventh Circuit decisions have affirmed cases where a motivating-factor instruction was not given, further suggesting that some set of Title VII cases exists where such instructions are not appropriate. *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 380-81 (7th Cir. 2011).

The Court believes this is just such a case. In this case, the parties vigorously contested Rapold's actions. Baxter argued that Rapold repeatedly engaged in inappropriate behavior, and Rapold repeatedly denied that he engaged in such behavior or minimized its significance. Baxter went for broke, claiming that the sole reason it terminated Rapold was because of his inappropriate behavior. In other words, Baxter presented its case to the jury as an "either/or" scenario — either it withdrew the offer of employment because of his performance or because it harbored an impermissible animus, but not some combination of the two. No Seventh Circuit precedent suggests that a motivating-factor instruction is required in such a case.

Further, even if Seventh Circuit precedent required a motivating-factor instruction, Rapold cannot demonstrate that he was prejudiced by the Court's failure to give such an instruction. As noted earlier, Baxter presented extensive testimony about Rapold's abrasive and unprofessional demeanor. It documented incident after incident in which Rapold offended both Baxter employees and persons with whom Baxter did business. The jury heard Rapold deny the existence or significance of these incidents. Still, the jury credited Baxter's version of events and not Rapold's. Although Rapold argues that a motivating-factor instruction would have caused the jury to arrive at a different verdict, he offers no explanation why the jury would have discounted the mountain of

testimony that Baxter presented regarding its repeated efforts to convince Rapold to act with basic professional courtesy.

The Court DENIES the Motion to for a New Trial.

Baxter also seeks to recover $10,607.65 in costs, mostly fees for transcripts. Rapold raises three objections to Baxter's costs. First, Rapold argues that the fees for the transcript of Dr. Ronald Missun were not necessary. Rapold prepared an economic damages report and Missun's name and signature appeared on that report. When Baxter asked to take Missun's deposition, Rapold informed it that Missun was not being disclosed as an expert witness and that Dr. David Gibson, Missun's partner, was his sole expert.

The relevant inquiry in determining whether costs for a deposition are taxable is whether the cost was "reasonably necessary to the case at the time it was taken." *BASF AG v. Great Am. Assurance Co.*, 595 F. Supp. 2d 899, 904 (N.D. Ill. 2009). Although Rapold disclosed to Baxter that it did not intend to call Missun as an expert at trial, Missun admitted during his deposition that he would testify at trial if Gibson were unavailable. Given the possibility that Missun and not Gibson would testify regarding Rapold's economic damages report, it was not unreasonable to take Missun's deposition to determine his involvement with the preparation of and opinion regarding the report. The Court finds that these costs were reasonably necessary to Baxter's defense of the case at the time they were incurred.

Next, Rapold objects to Baxter's decision to obtain expedited transcripts for Christine Parro, Harmut Ehrlich, and Andrea Hunt. Baxter argues that it needed transcripts of Parro's and Ehrlich's deposition quickly in order to prepare for its deposition of Hunt. *See Fischer v. Avanade, Inc.*, 2007 WL 3232494, at *2 (N.D. Ill. Oct 31, 2007). In *Fischer*, however, the future depositions took place

the very next day. *Id.* Here, Ehrlich's deposition was taken 32 days before Hunt's and Parro's was taken 29 days before Hunt's. Reviewing Baxter's deposition invoices, it appears that most invoices were delivered approximately two weeks after the date of the deposition, which would have left Baxter with, at worst, approximately two weeks to prepare for Hunt's deposition had it not expedited the delivery of the transcripts. Accordingly, the Court finds that the expedited transcripts were not reasonably necessary to Baxter's defense. It therefore reduces Baxter's fee request by $894.50 (that is, calculating the cost of the depositions at $3.25/page resulting in a $464.10 reduction in costs for Hunt's deposition, a $313.82 reduction for Parro's deposition, and a $116.58 deduction for Ehrlich's deposition).

Finally, Rapold objects to the fees paid to two of Baxter's witnesses, Linda Lincoln and Paroo Uppal. Rapold notes that the statutory allowance fee for witnesses is $40/day plus mileage. 28 U.S.C. § 1821, and suggests that their fees exceed the statutory amount. Rapold's objection is puzzling. In its Bill of Costs, Baxter clearly identifies the mileage traveled by each witness and the figures "add up."

Accordingly, the Court awards Baxter $9713.15 in costs.

IT IS SO ORDERED.

6/29/11
Dated

Hon. William J. Hibbler
U.S. District Court